Corle *v.* Monkhouse.

CALVIN CORLE, executor of Peter W. Young, deceased,

*v.*

LYDIA Y. MONKHOUSE et al.

1. A tenant of farm land, whether for a term certain or uncertain, has a ·right, after the expiration of his term, to enter upon the demised premises ·and cut and carry away all the grain which he has sown but which was not ripe when his term expired.

2. Where a gift is made of the interest or income, either of the whole of the residue, or a particular part of it, to one person for life, and the principal is given over to others on the death of the life tenant, the life tenant is entitled ·to interest from the date of the death of the testator.

3. Where goods and chattels are given generally, or as a residue of personal ·estate, to two persons, to be enjoyed in succession, one to have the use during life and the other to take the remainder on the death of the life tenant, ·the general rule is, that the remainderman has a right to have the property, with·out unreasonable delay, converted into money, and the money invested, so that ·the principal may be made secure to him on the death of the life tenant, and that the life tenant may have the interest of the principal during his life.

4. This general rule does not, however, apply to a case where the testator ·has expressed an intention that the property, as it existed at his death, should ·be enjoyed in specie, although the property be not, in a technical sense, ·specifically bequeathed.   In such a case the legatee for life has a right to the ιuse and enjoyment of the property in specie during his life.

On final hearing on bill, answers and proofs taken in open ·court.

*Mr. Alvah A. Clark*, for the complainant.

*Mr. Hugh H. Hamill,* for Lydia Y. Monkhouse.

*Mr. William Y. Johnson,* for himself.

VAN FLEET, V. C.

The questions which will be decided now relate exclusively to the rights which the widow of Peter W. Young, deceased, took under his will. Mr. Young died on the 8th day of March, 1887, and his will was admitted to probate on the 25th of the same month. His widow died on the 26th day of February, 1888, a little short of a year after her husband's death. She also died testate, and by her will appointed as her executor the same person whom her husband had appointed. Disputes have arisen as to whether certain property passed by the will of the husband to his widow, so that it now constitutes part of ·her estate, and as such must pass by her will to her beneficiaries, and as the same person is the executor of the two wills under which these adverse claims are made, and as he is, consequently, in a position which renders it improper for him to become the champion of either set of claimants, he has, for that reason, brought this suit, seeking the direction of the court so that he may perform his duty with safety to himself and with justice to the adverse claimants.

The provisions of the husband's will, showing what rights were conferred upon his widow, will be quoted in full, and the other pertinent provisions simply stated in substance. The testator first said:

"I give and bequeath to my beloved wife, Penelope Young, the full use, occupation, possession, enjoyments, rents, issues and profits of all my messuages, lands and tenements, wheresoever situated, together with the use of all my personal property, of every kind and description, that shall remain after paying my debts and funeral expenses, with the interest accruing on my bonds, notes, stocks and all other evidences of debt, during her natural life, and at her death I give and bequeath the same as follows."

The testator then gave two persons a legacy of $500 each, payable when they reached the age of twenty-one years; and to his surviving executor $1,000 in trust, to be invested and the interest applied to keeping his burial plot in good order. He then said:

Corle *v.* Monkhouse.

"I give and bequeath to my nieces, Lydia Y. Johnson" [now Mrs. Monk-house] "and Penelope Y. Herder, all my household goods *that may be remaining at my wife's death,* to be equally divided between them, share and share alike."

He then gave three legacies to three different persons—to one $3,000, to another $2,000, and to a third $500. He then devised thirty-five acres of land to Mahala Cray for life, with remainder to Lydia Y. Johnson ; he next devised a farm to Peter Y. Herder, and then devised a farm, called the "Huff farm," to his surviving executor in trust, for the benefit of William P. Johnson. He then said :

"I give and bequeath to Lydia Y. Johnson the balance of my personal property *that may be remaining at my wife's death,* of every kind and description, after paying all my debts, my wife's funeral expenses and the legacies herein bequeathed."

The testator owned, at the time of his death, considerable farm-land. He gave, in the language of his will, the use, occupation, possession, enjoyment, rents, issues and profits of all his lands to his widow for her life. Crops of wheat and rye were growing on some of the farm-lands when the widow died, which had been sown during the continuance of her life estate. Both the devisee in remainder of the lands and the legatee of the balance of the personal property claim the winter grain growing at the widow's death. As long ago as 1819, Chief-Justice Kirkpatrick, in deciding *Van Doren* v. *Everitt, 2 South. 460, 463,* said : "In this state I have always understood it to be the universal custom, and therefore the settled law, that the tenant, after the expiration of his term, should have liberty to enter, cut and carry away his waygoing crop, as it is called, that is, all the grain that he has sown, but which was not then ripe. * * * Indeed, the matter appeared to me to be so well settled that I was surprised to hear it made a question." The same right inheres in a tenant for life. That has been the rule of the common law from the earliest times. In *Coke on Littleton, under title of "Tenant at Will" 55b,* it is said :

Corle *v.* Monkhouse.

·"And this is not only proper to a lessee at will, that when the lessor determines his will that the lessee shall have the corn sowne, &c., but to every particular tenant that hath an estate incertaine, for that is the reason which Littleton expresseth in these words, because he hath no certaine, nor sure estate. And therefore if tenant for life soweth the ground, and dieth, his executors shall have the corn, for that his estate was uncertaine, and determined by the act of God. And the same is the law of the lessee for years of the tenant for life."

And Comyn (*2 Com. Dig. tit. "Biens" (G2) p. 272*) says :

"So every one, who has an uncertain estate or interest, if his estate determines by the act of God before severance of the corn, shall have the emblements, or they go to his executor or administrator; as if tenant for life sow the land and die before severance."

The rule, as thus stated, is the recognized law of this state. *De Bow* v. *Colfax, 5 Halst. 128; Howell* v. *Schenck, 4 Zab. 89, 93.*

The widow's executor is entitled to the crop of winter grain. The other claimants are, in my judgment, without the least right.

It is also claimed, that as the widow died in less than a year after the date of the testator's death, her executor is not entitled to the interest which accrued on the testator's securities in the interim. This claim is founded, as it seems to me, on an obvious misapprehension, both of the testator's intention and the law. As I read his will, the testator has made it very plain that he wanted his widow to have all the interest which should accrue on his securities between the date of his death and the time when she should die. Stripping the clause, in which the gift of the interest is made, of all extraneous matter, it will read as follows : "I give and bequeath to my beloved wife the interest accruing on my bonds, notes, stocks and all other evidences of debt during her natural life." His will must be read as speaking from the hour of his death. So reading it, it seems to me to be clear, beyond dispute, that every penny of interest which accrued after his death and before hers, became hers by the plain words of the will.

The general rule undoubtedly is, that where no time is fixed by the will for the payment of a legacy, and it is not sooner paid, interest will not begin to accrue on it until the end of a year from the testator's death.   But this rule is subject to exceptions, and one of the exceptions to it is, that where a gift is made of the interest or income, either of the whole of the residue, or of a particular part of it, to one person for life, and the principal is given over to others on the death of the life tenant, the life tenant is entitled to interest from the date of the testator's death. This exception rests on obvious considerations of justice.   To adopt the general rule in such a case would result, as is plain, in the augmentation of the principal fund, by the addition of one year's interest, and the remainderman would thus be given just that much more as principal, than existed as principal at the testator's· death.   It would deprive the life tenant of one year's interest, or so much as was received as interest after the testator's death, and convert that much interest into principal and take it from the life tenant and give it to the remainderman.   The cases establishing the right of the life tenant in such a case to interest from the testator's death are *Green* v. *Green, 3 .Stew. .Eq. 451;* *Van Blarcom* v. *Dager, 4 Stew. Eq. 783, 795*; *Welsh* v. *Brown, 14 Vr. 37, 41,* and *Davison* v. *Rake, 17 Stew. Eq. 506, 508.*

The remaining question is, had the widow a right to enjoy, during her life, the personal property of the testator in specie, that is, to have the use of the things themselves as contradistinguished from the interest of the money for which they might have been sold?   And by the words "personal property," as here used, is meant that part of the testator's personal estate which consisted of household goods and stores, and farming implements and farming stock and stores.   This is a question which must be decided by the testator's intention.   His intention controls, and is the law, by which the rights of the parties must be determined. There can be no doubt that where goods and chattels are given generally, or as a residue of personal estate, to two persons, to be enjoyed in succession, one to have the use during life and the other to take in remainder on the death of the life tenant, that the remainderman has a right to have the property, without

Corle v. Monkhouse.

unreasonable delay, converted into money and the money invested, so that the principal may be made secure to him on the death of the life tenant, and that the life tenant may have the interest of the principal during his life. This is the general rule, but courts depart from it whenever it appears that the testator· meant that the life tenant should enjoy the property in specie. "And," as is said in *2 Williams on Executors (6th Am. ed.) .1177*, "a great number of cases (in some of which the court has laid hold of expressions, apparently unimportant, as sufficient indications of such intention) have been decided on this principle." And Wigram, V. C., said, in *Hinves* v. *Hinves, 3 Hare 609, 611:* "In modern. cases, the court, in applying the rule, has leant against conversion as strongly as is consistent with the supposition that the rule itself is well founded." To entitle the life tenant to the enjoyment of the property in specie, and to disentitle the remainderman to a conversion, it is not necessary that the property should be given to the life tenant by way of specific bequest, in the technical sense of those words. The life tenant is entitled to the enjoyment of the property in specie if such appears to have been the wish of the testator. That was the view expressed by Lord Cottenham in *Pickering* v. *Pickering, 4 Myl. & C. 289, 299*, and such I understand to be the view expressed by Chancellor Green in *Ackerman's Admrs.* v. *Vreeland's Exr., 1 McCart. 23, 28.* The best statement of the law on this subject, that has come under my observation, is that made by Wigram, V. C., in *Hinves* v. *Hinves, supra.* On page 611 he says: "I take the rule to be, that where personal estate is given in terms amounting to a general residuary bequest, to be enjoyed by persons in succession, the interpretation the court puts upon the bequest is, that the persons indicated are to enjoy the same thing in succession; and, in order to effectuate that intention, the court, as a general rule, converts into permanent investments so much of the personalty as is of a wasting or perishable nature at the death of the testator, and also reversionary interests. The rule did not originally ascribe to testators the intention to effect such conversions, except in so far as a testator may be supposed to intend that which the law will do; but

the court, finding the intention of the testator to be that the
objects of his bounty shall take successive interests in one and
the same thing, converts the property, as the only means of giving
effect to that intention.   But, if the will expresses an intention
that the property, as it existed at the death of the testator, shall
be enjoyed in specie, although the property be not, in a technical
sense, specifically bequeathed, to such a case the rule does not
apply."   But in that case the life tenant has a right to enjoy the
property in specie.

The test question, then, on this branch of the case is, does the
will of Peter W. Young, deceased, indicate an intention that his
widow should, during her life, have a right to enjoy his house-
hold goods and stores, and farming implements and farming
stock and stores in specie?   Mr. Young was a farmer.   For
many years prior to his death he and his wife had lived together
on a large farm which he had cultivated himself; he died there;
just prior to his death he had hired workmen for the ensuing
year; he and his wife were both very aged people; they had no
children; he knew that his wife, after he was gone, would be
more comfortable and contented in their old home, surrounded
by the objects which, from long association, had become dear and
familiar to her, than anywhere else on earth.   We must read the
will in the light of these facts to discover its real meaning.   Now,
it will be remembered, that the first provision the testator makes
for his widow is, that she is to have the full use, occupation,
possession and enjoyment of all his lands during her life.   That
he meant that she should have the enjoyment of the homestead
farm alone, to the same extent, and just in the same manner that
he and she had enjoyed it together, seems to me to be entirely
free from doubt.   From their long association with that place as
their home, and the tastes and desires engendered by the life they
had lived there, made it not only the natural wish of the testa-
tor's heart, but most probably his chief desire, that when he was
gone his widow should take his place and live there her remain-
ing days in the same manner and after the same fashion in which
he and she had lived there together.   His will, I think, makes
it manifest that he wanted his widow, on his death, to step into

Corle *v.* Monkhouse.

his place, and to have, during her life, the same benefit from the use and enjoyment of all his property that he and she had together during their joint lives. After giving his widow the full use of all his lands during her life, he next gives her the use of all his personal property, of every kind and description, that shall remain after the payment of his debts and funeral expenses. During the life of his widow no part of his estate is to be disposed of except so much thereof as may be necessary to pay his debts and funeral expenses. Neither legatee nor devisee is to have anything until after the death of his widow. And then, after his widow is dead, the legatees of the household goods are to take what? All that he left? No, but, in the language of the will, " *all my household goods that may be remaining at my wife's death.*" And so, too, in disposing of the balance of his personal property, he says : " I give and bequeath to Lydia Y. Johnson, the balance of my personal property *that may be remaining at my wife's death.*" Neither legatee is to have all that the testator left, but only what should remain on the death of his widow. The words of the will evince, in the clearest and most positive manner, that the testator intended that his household goods and stores, and his farming implements and farming stock and stores should, on his death, pass, in actual possession, to his widow, and that she should have the use of them in specie during her life, and that on her death the right of the legatees in remainder should be limited simply to what should then remain. The executor is only answerable for what remained on the death of the widow. Loss arising from consumption in use and diminution in value by use constitutes part of the gift to the widow, and consequently the executor is not answerable for it.

To avoid misapprehension, it is perhaps necessary for me to say, that I must not be understood as saying that an executor is under a duty to convert in any case, where the use of chattels is given to one person for life with remainder to another, until he is directed by the court to make a conversion.

This disposes of all the questions which should, in the present state of the suit, be decided. The pleadings raise other questions upon which the parties will have a right to the judgment of the

court, but not until other persons, having a substantial interest in them, have been made parties and have been afforded an opportunity to be heard upon them by both proof and argument.